REQUESTED BY: Donald E. Sorensen, Commissioner, Nebraska Department of Labor, Lincoln, Nebraska
1. Does Nebraska's Veterans' Preference Law apply only in situations where a veteran seeks initial employment with the State of Nebraska, or does a veteran continue to have veterans' preference throughout his or her career with the state even when applying for a promotion within the original agency or transferring to another agency of the state?
2. If veterans' preference applies to promotions, then does that preference apply only to promotions within an agency, or does it also apply to transfers from one agency to another?
3. How should the preference be applied if an employer covered by the Veterans' Preference Law does not give an examination or grade applicants?
4. Since the Nebraska Merit System has been merged with the Department of Personnel and no longer exists, should the State of Nebraska now be treated, for the purposes of 48-226, as if no merit system is in effect?
5. Does the Veterans' Preference Law take precedence over any affirmative action programs or rules and regulations adopted by the Affirmation Action Office of the Department of Personnel?
1. The intent and purpose of the Nebraska Veterans' Preference Law is to grant veterans preference only when seeking initial employment with the state.
2. Based on our answer to Question No. 1, we conclude that the preference granted to veterans does not apply to veterans already employed by the state who apply for promotions or transfers.
3. In applying the preference accorded to veterans in non-merit situations, the Commissioner and the Department of Labor should continue to adhere to their established interpretation that § 48-226 requires employing agencies to recognize the preference upon determining applicants who are qualified for employment, and that eligible veterans are entitled to employment over non-veterans of equal qualifications in the final selection process.
4. Yes, since there no longer exists a state merit system utilizing competitive examinations to which the point preferences of § 48-227 could apply, the provisions of 48-226
should be applied for purposes of granting veterans' preference when applying for employment with the state.
5. Yes, based on the specific preference granted to veterans and the enforcement provisions provided by the Legislature in the veterans' preference statutes, we conclude that the veterans' preference statutes take precedence over the goals adopted under affirmative action plans or rules and regulations adopted by the Affirmative Action Office.
1. Initially, you have asked our opinion concerning whether the Nebraska Veterans' Preference Law applies only in situations where veterans seek initial employment with the State of Nebraska, or whether the preference also applies to veterans already employed by the state who apply for promotions or transfers. Neb.Rev.Stat. § 48-226 (Reissue 1978) provides: `A preference shall be given to preference eligibles seeking employment with the State of Nebraska' in agencies where no merit system is in effect. (Emphasis added.) In addition, Neb.Rev.Stat. § 48-227 (Reissue 1978) provides point preferences to eligible veterans `seeking employment' who obtain passing scores on examinations given for merit system jobs. The act, however, does not define `seeking employment.' To answer your question, it is necessary to interpret the meaning of the phrase `seeking employment' contained in §§ 48-226 and 48-227.
The words `seeking employment' are open to two possible interpretations. The first is that `seeking employment' refers only to situations where eligible veterans seek initial employment with the state. The second possible construction is that the words `seeking employment' make the preference applicable not only to veterans seeking initial employment, but also to situations where veterans already employed by the state are seeking promotions or transfers.
The phrase `seeking employment,' being subject to two possible interpretations, is ambiguous and therefore in need of construction. `When the language used in a statute is ambiguous and it becomes necessary to construe it, the principal objective is to determine the intent of the Legislature and to give it effect.' PPG Industries Canada Ltd. v.Kreuscher, 204 Neb. 220, 281 N.W.2d 762 (1979). `The reasons for the enactment of a statute and the purposes and objects of an act may be guides in an attempt to give effect to the main intent of lawmakers.' State ex rel. Bouc v.School Dist. of the City of Lincoln, 211 Neb. 731,320 N.W.2d 472 (1982).
The Veterans' Preference Law was enacted in 1969. The Introducer's Statement of Purpose of LB 1308 (1969), the bill containing the veterans' preference provisions, asserted its purpose was `the giving of war veterans a preference in application for employment with the state or its governmental subdivisions.' LB 1308 (1969), Introducer's Statement of Purpose, April 14, 1969. During the Government and Military Affairs Committee hearing and floor debate leading to the bill's passage, the introducer, Senator Carpenter, stated the purposes of this legislation in the following terms: (1) To `put these veterans back to work after they have been honorably discharged from service of their country;' and (2) to clarify `disagreements in the area of the application of the employment of those men who have been employed in the service of their country' regarding `who had the ultimate responsibility of taking them back.' LB 1308 (1969), Transcript of Government and Military Affairs Committee Hearing of April 17, 1969, p. 45; Transcript of Floor Debate, July 30, 1969, p. 3401.
These statements demonstrate the Legislature's intent in enacting this statute was to provide a preference to veterans applying for state or government employment upon their return from military service. The purpose of the statute was to give veterans a preference only when applying for or seeking initial employment, not to create a continuing preference for veterans once they have been employed by the state. There is no indication of a legislative intent to extend the preference to situations where veterans already employed by the state apply for promotions or transfers. Furthermore, several states have statutory provisions specifically granting veterans promotional preferences. E.g., Iowa Code Ann. § 70.1 (West Cum. Supp. 1983); N.Y. Civ. Serv. Law § 85 (McKinney 1983); N.C. Gen. Stat. § 128-15
(1981). If the Legislature intended to make the preference applicable to veterans seeking promotions or transfers, it could have specifically expressed such an intent as has been done in the statutes of other states.
Based on the foregoing analysis, it is our opinion that the Nebraska Veterans' Preference Law applies only when veterans seek initial employment with the state, and does not apply when veterans already employed by the state apply for promotions or transfers.
2. Your second question relates to whether veterans' preference applies to promotions or to transfers between agencies. Based on our answer to Question No. 1, we conclude the preference granted to veterans does not apply to veterans already employed by the state who apply for promotions or transfers.
3. Your third question relates to the proper application of veterans' preference in situations where applicants for employment with the state are not tested or rated based on their experience or education. The statutory provision applicable to this situation is Neb.Rev.Stat. § 48-226 (Reissue 1978), which provides:
 A preference shall be given to preference eligibles seeking employment with the State of Nebraska or its governmental subdivisions in those agencies where there is no merit system in effect. (Emphasis added.)
The use of the word `shall' indicates an intent to impose a mandatory duty upon state entities to grant veterans preference when applying for employment. Moyer v. Douglasand Lomason Co., 212 Neb. 680, 325 N.W.2d 648 (1982). The statute, however, provides no definition of the word `preference' to aid in determining what consideration the Legislature intended to accord to eligible veterans seeking employment with the state.
A preference is commonly defined as `the act, fact, or principle of giving advantages to some over others.' Webster's Seventh New Collegiate Dictionary, Springfield, Mass.: G. and C. Merriam Co. (1965), p. 670. In a written order issued following a hearing before an administrative law judge of the Nebraska Department of Labor, In re ThomasBartell, Docket 001-83 VP, June 1, 1983, the administrative law judge interpreted the preference accorded to veterans under § 48-226 to require, in the final selection process, recognition of the preference among those candidates for a specific position who are qualified for the position. The administrative law judge construed the statute to provide that, upon such a determination, applicants being vested with the preference would be entitled to placement or selection in the position over other applicants of equal qualifications who do no hold such a preference.
Neb.Rev.Stat. § 48-229 (Reissue 1978) places the duty of enforcement of the veterans' preference statutes on the Commissioner of Labor. Subsection (1) of § 48-229 provides the Commissioner shall adjudicate preference claims where there is disagreement or doubt regarding the application of the preference. Pursuant to this duty of enforcement, the Commissioner and the Department of Labor have consistently interpreted the preference granted veterans under § 48-226
as requiring recognition of the preference upon a determination of those applicants who are qualified for employment, and as providing that eligible veterans are entitled to employment over non-veterans of equal qualifications in the final selection process.
As a general rule, courts will show deference or give weight to the interpretation of a statute by an agency charged with its administration and enforcement. 73 C.J.S.Public Administrative Law and Procedure, § 67, pp. 537-540 (1983); see, McCaul v. American Savings Co., 213 Neb. 841,331 N.W.2d 795 (1983). The function of placing a definition on a particular statutory term of legislation enforced by an agency should rest initially with the appropriate administrative body. Zuber v. Allen, 396 U.S. 168 (1969). While the court is not bound by a construction placed on a statute by an administrative agency, Skidmore v. Swift Co.,323 U.S. 134 (1944), an administrative interpretation of a statute will not generally be interfered with unless there are compelling indications that it is wrong, E. I. Du Pont deNemours Co. v. Collins, 432 U.S. 438 (1977), or unlawful.Peterson v. Vinal, 225 F. Supp. 478 (D.Neb. 1964).
Applying these principles, we believe the construction placed on the provisions of § 48-226 by the Commissioner and the Department of Labor, pursuant to their duty to enforce the veterans' preference statutes, is reasonable and cannot be characterized as erroneous or unlawful. It is therefore our opinion that, in applying the preference accorded to veterans in non-merit situations, the Commissioner and Department of Labor should continue to adhere to their established interpretation that § 48-226 requires employing agencies to recognize the preference upon determining applicants who are qualified for employment, and that eligible veterans are entitled to employment over non-veterans of equal qualifications in the final selection process.
4. Your fourth question relates to the effect which the recent merger of the Nebraska Merit System with the Department of Personnel has on the provisions of Neb.Rev.Stat. §§ 48-226
and 48-227 (Reissue 1978). Section 48-226 provides that preference shall be given to veterans seeking employment with the state or its governmental subdivisions `where there is no merit system in effect.' Section 48-227 provides point preferences for eligible veterans seeking employment who obtain passing scores on examinations with the state or its governmental subdivisions' . . . where there is a merit system in effect.'
We assume your question relates to the merger of the Joint Merit System, as provided for in Neb.Rev.Stat. §§81-8,106 and 81-8,107 (Reissue 1981). The Nebraska Merit System was abolished by statute in 1951. Laws 1951, c. 311, 11. The provisions of the Nebraska veterans' preference statutes were never applicable to positions subject to the Joint Merit System. Neb.Rev.Stat. § 48-228 (Reissue 1978).
Since there no longer exists a state merit system utilizing competitive examinations to which the point preferences of § 48-227 could apply, we believe the provisions of § 48-226 should be applied for purposes of granting veterans' preference when applying for employment with the state. The provisions of § 48-227 would still apply, however, to governmental subdivisions of the state which, pursuant to civil service or merit systems, utilize examination in the selection and hiring of employees for particular positions.E.g., Neb.Rev.Stat. §§ 19-1801 to 19-1824 (Reissue 1983) (establishing civil service system for cities with a population over 5,000 having paid police or fire departments); Neb.Rev.Stat. §§ 23-2501 to 23-2516 (Reissue 1983) (establishing civil service system for counties having a population over 300,000); Neb.Rev.Stat. §§ 23-2517 to 23-2533
(Reissue 1983) (establishing civil service system for counties having a population of 150,000 to 300,000); Neb.Rev.Stat. §§ 23-1721 to 23-1737 (Reissue 1983) (establishing merit system in the office of the county sheriff in counties having a population over 25,000).
It is therefore our opinion that, for purposes of granting veterans' preference to positions of employment with the State of Nebraska, the preference accorded to veterans under § 48-226 should be applied.
5. Your final question concerns whether the statutory preferences granted to veterans take precedence over the requirements of any affirmative action program or rules and regulations adopted by the Affirmative Action Office of the Department of Personnel.
The statutory provisions granting preferences to veterans seeking employment with the state or its governmental subdivisions are contained in Neb.Rev.Stat. §§ 48-225 to48-231 (Reissue 1978). Section 48-229 places the duty of enforcing the veterans' preference statutes on the Commissioner of Labor, and provides the Commissioner shall adjudicate cases where there is disagreement or doubt regarding the application of the preference. Furthermore, 48-230
provides for a criminal penalty to be imposed on persons violating the veterans' preference statutes. Section48-231 places on county attorneys the duty of prosecuting persons charged with violating the Veterans' Preference Law.
The statutory provisions relating to Affirmative Action Programs are contained in Neb.Rev.Stat. §§ 81-1355 to81-1368 (Reissue 1981). Section 81-1355 provides:
 It is declared to be the public policy of Nebraska that each division of state government shall take positive action in all areas of its operation to insure that all citizens are given fair and equal opportunities for employment and advancement regardless of race, color, religion, national origin, age, sex, marital status, or physical or mental disability.
Section 81-1361 requires each state agency to submit an affirmative action plan to the Affirmative Action Office and the Affirmative Action Committee.
The remedy for noncompliance by an agency with its affirmative action plan is contained in § 81-1368. This section provides that, where noncompliance is indicated, a corrective action plan shall be made to secure compliance. Ultimately, if the corrective action plan does not resolve the noncompliance, § 81-1368 requires the Affirmative Action Committee to report the noncompliance to the Governor, and to make such report available to the news media. Thus, unlike the specifically enforceable statutory provisions for violation of the veterans' preference statutes, providing for adjudication of claims by the Commissioner of Labor under § 48-229 and the imposition of a criminal penalty pursuant to §§ 48-230 and 48-231, the remedy for noncompliance with affirmative action plans is limited to requiring corrective action plans and reporting noncompliance to the Governor and the media. The statutes relating to affirmative action plans, which require the establishment of goals to be achieved in the employment of various groups, do not provide for any adjudicative remedy or criminal enforcement for noncompliance with the plan.
While the Nebraska Supreme Court has not had occasion to consider the relationship between the veterans' preference statutes and the state's affirmative action program, the Montana Supreme Court, in Crabtree v. Montana State Library, ___ Mont. ___, 665 P.2d 231 (1983), held a Montana statute granting an absolute preference to veterans and disabled citizens applying for public employment did not conflict with the Department of Administration's statutory duty to implement and maintain affirmative action programs. In reaching this conclusion, the court stated:
 We view the veterans' and disabled civilians' preference statute as being in essence an affirmative action program a program designed to confer certain benefits on those classes covered.
___ Mont. at ___, 665 P.2d at 235. The court further stated the preferences accorded veterans and disable civilians under the statute `were granted by the legislature, and they must be given full effect.' Id. at ___, 665 P.2d at 236.
It has been recognized that statutory preferences accorded to veterans may operate to limit government employment opportunities for those who are not veterans, and that such preferences can conflict with the policy goals underlying the principle of equal opportunity and the implementation of affirmative action programs. See, Report of the Comptroller General, Conflicting Congressional Policies: Veterans' Preference and Apportionment vs. Equal Employment Opportunity (September 29, 1977). The extent to which the preference granted to veterans should take precedence over goals regarding equal opportunity and affirmative action, however, is a matter of policy to be decided by the Legislature. The preferences granted to veterans under the Nebraska statutes, having been enacted by the Legislature, must be given effect. It is therefore our opinion that the Nebraska veterans' preference statute, by virtue of their specifically enforceable provisions in the form of adjudication by the Commissioner of Labor and the imposition of a criminal penalty for violations, take precedence over the goals adopted under affirmative action plans or rules and regulations adopted by the Affirmative Action Office.
Very truly yours,
PAUL L. DOUGLAS Attorney General
L. Jay Bartel Assistant Attorney General
APPROVED:
Paul L. Douglas Attorney General